IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01604-DDD-NYW

MARGARITA GODOY,
JOSE GODOY,
FRANCISCO MARQUEZ,
ESTHELA ALAMO,

      Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

      Defendant.

## ORDER ON MOTION TO STRIKE

Magistrate Judge Nina Y. Wang

This matter comes before the court on the Motion to Strike the Errata Sheet for the Deposition of Lisa Day ("Motion to Strike" or "Motion"), filed by Plaintiffs Margarita Godoy, Jose Godoy, Francisco Marquez, and Esthela Alamo (collectively "Plaintiffs") on May 3, 2021. [Doc. 32]. The Motion to Strike was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated June 30, 2020 [Doc. 18], and the Order Referring Motion dated May 3, 2021 [Doc. 33]. This court has reviewed the Parties' respective briefs and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. Being fully advised of the premises, the court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion.

### BACKGROUND

Plaintiffs bring claims for breach of contract, improper denial of benefits, and bad faith arising out of a motor vehicle accident. [Doc. 27 at ¶¶ 133–48]. Plaintiffs allege a third party

collided with Plaintiff Jose Godoy's vehicle while he and Plaintiffs Margarita Godoy, Francisco Marquez, and Esthela Alamo were riding in the vehicle as passengers, which caused another vehicle to subsequently crash into the back panel of the Godoy vehicle. [*Id*. at ¶¶ 5–11]. As a result of the accident, Plaintiffs suffered various physical injuries for which they accrued medical expenses. [*Id*. at ¶¶ 14–26]. Plaintiffs allege the third party who caused the collision was not insured on the date of the accident, but Plaintiff Jose Godoy was insured under an automobile insurance policy issued by Defendant State Farm Mutual Automobile Insurance Company ("Defendant" or "State Farm"). [*Id*. at ¶¶ 27–28]. Plaintiffs further allege that each of them notified Defendant of, and sought payment for, his or her claim for uninsured motorist ("UM") benefits, which Defendant has failed to pay. [*Id*. at ¶¶ 33–35].

On December 18, 2020, Plaintiffs' counsel deposed Lisa Day, the claims adjuster that State Farm assigned to Plaintiffs' claims. [Doc. 32 at 2; Doc. 32-1 at 1–2]. Relevant here, Ms. Day testified that she was not aware of any information (1) regarding Plaintiffs' "failure to cooperate," [Doc. 41-1 at 223:21–224:1]; (2) that Plaintiffs either did not respond or delayed responding to Ms. Day's requests for information about their claims, [*id*. at 224:2–23]; and (3) that Plaintiffs' failures to respond did not have any impact on Plaintiffs' claims, [*id.* at 224:21–225:3, 228:20–229:2]. She further testified that her understanding at the time was that Plaintiffs were not required to respond to Defendant's settlement offers. [*Id*. at 226:24–227:17, 229:3–8].

On April 9, 2021, Ms. Day submitted an errata sheet, making seven changes to her deposition testimony. [Doc. 32-1]. The identified errata was as follows:

2

| Line | Page | From: | To: |
|---|---|---|---|
| 224 | 1 | I'm not aware of anything like that. No. | I did not receive the information I requested nor did I ever receive any phone calls or correspondence to my letters. I also received no response to my offers which made it difficult to get to an agreed upon value with the insured. |
| 224 | 21-23 | It didn't have any impact, but I was just trying to be proactive at the time before I knew it couldn't. | It didn't have any impact, but I was just trying to be proactive at the time before I knew it couldn't. However, without knowing what each person's injuries were and what the at fault limits or payments were I can't complete an evaluation. In addition, if there is other UM/UIM coverage that applies I need to know so I can determine if pro-rata will apply. Although I don't think it ended up having an impact on the claim, I try to be proactive in an effort to be ready to resolve the claim for the insured as soon as they are ready. |
| 225 | 2-3 | No. It didn't end up having any impact on these particular claims. | I'm not sure if it ended up having any impact on these particular |

(1), (2), (3) annotations mark the three rows.

3

|  |  |  |  | evaluations; however, in my experience conversations can change an evaluation. What I do believe it impacted was any ability to resolve the claim for our insureds. |
|---|---|---|---|---|
| (4) | 227 | 12 | To my understanding, it's not a requirement. | To my understanding, it's not a requirement but under the policy insureds do have a duty to cooperate. |
| (5) | 227 | 17 | No, not to my knowledge, it's not required. | To my knowledge it's not a requirement but again, my understanding is that insureds have a duty to cooperate. |
| (6) | 229 | 2 | Not in the long run. No. | I'm not sure, I'd have to go back and look at all of the information we requested and whether it was received or not, then determine if it would've impacted the evaluation. So it could have. |
| (7) | 229 | 7-8 | To the best of my knowledge, it's not a requirement that we get a response to our offers. | To the best of my knowledge, it's not a requirement that we get a response to our offers but it is my understanding that under the policy, our insureds have a duty to cooperate. |

[Doc. 32-1].

       First, she attempts to clarify whether she had knowledge of Plaintiff's "failure to cooperate" by stating, "I did not receive the information I requested nor did I ever receive any

phone calls or correspondence to my letters. I also received no response to my offers which made it difficult to get an agreed upon value with the insured." [*Id*. at 4]. Second, Ms. Day attempts to clarify the specific information she sought, but did not receive, from Plaintiffs, and whether such information affected her ability to evaluate Plaintiffs' claims. [*Id*.]. For example, she states, "[i]n addition, if there is other UM/UIM coverage that applies I need to know so I can determine if pro-rata will apply." [*Id*.] Ms. Day's third and sixth changes also seek to clarify whether the information she sought, but did not receive, from Plaintiffs impacted her evaluation of their claims. [*Id*. at 4–5]. Finally, Ms. Day's fourth, fifth, and seventh changes attempt to clarify her understanding of whether Plaintiffs were required to respond to Defendant's settlement offers, stating that Plaintiffs "had a duty to cooperate" under the policy. [*Id*. at 5]. Ms. Day provides the same reason for seeking to change each testimony: "It was late in the day and I was suffering from a headache." [*Id*. at 3].

Plaintiffs subsequently filed the present Motion to Strike [Doc. 32] on May 3, 2021. Defendant responded to the Motion on May 24, 2021 [Doc. 34], and Plaintiffs replied on June 7, 2021 [Doc. 35].

## ANALYSIS

**I.      Applicable Law**

Rule 30(e)(1) of the Federal Rules of Civil Procedure provides that within 30 days of when a deposition transcript is available, the deponent may sign a statement listing the "changes in form or substance," and the reasons for making them. Fed. R. Civ. P. 30(e)(1). The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") takes a restrictive approach to interpreting the Rule, and "takes a dim view of substantive alteration of deposition testimony." *BancFirst ex rel. Estate of M.J.H. v. Ford Motor Co.*, 422 F. App'x 663, 666 (10th Cir. 2011). Indeed, the Tenth

Circuit rejected the notion that Rule 30(e) allows a witness to change what was said under oath. *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 (10th Cir. 2002). Otherwise, "one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination." *Id.* at 1242 n.5 (quoting *Greenway v. International Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992)). In determining whether errata to deposition testimony should be stricken, a witness's attempt to amend her deposition testimony must be evaluated under the standard applied to "sham affidavits." *Burns v. Bd. of Cty. Comm'rs of Jackson Cty.*, 330 F.3d 1275, 1282 (10th Cir. 2003). Specifically, the court considers three factors: (1) "whether the affiant was subject to cross-examination during [her] earlier testimony"; (2) "whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence"; and (3) "whether the earlier testimony reflects confusion which the affidavit attempts to explain." *See Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir. 1986).

**II.   Application**

In the Motion, Plaintiffs contend that Ms. Day makes "substantial and material changes to her testimony." [Doc. 32 at 2]. Plaintiffs also argue that Ms. Day's stated basis for making her changes—that "[i]t was late in the day and [she] was suffering from a headache," [Doc. 32-1 at 3]—is objectionable because "Ms. Day at no time during her testimony stated that she had a headache nor did her experienced defense counsel seek to clarify her testimony at the time of the deposition." [Doc. 35 at 2]. Defendant responds that the Motion should be denied because "several of the corrections listed on the errata sheet have substantially the same answer and are not a contradiction of Ms. Day's testimony during the deposition." [Doc. 34 at 3]. After comparing Ms. Day's testimony as reflected in the transcript of her deposition with the errata, this court finds

6

that, with the exception of one change, Defendant's proffered amendments are not consistent with Rule 30(e).

As an initial matter, Ms. Day's changes regarding the information she sought, but did not receive, from Plaintiffs, as well as the purposes for which she was seeking that information—i.e., her second change—is proper. *See* [Doc. 32 at 2 (Question: "What information are you referring to?"); *see also* Doc. 41-1 at 224:10–11]. The relevant portion of the transcript reads as follows:

> Q: Is there anything that you are unable to investigate because [Plaintiffs] failed to cooperate?
>
> A: That's a difficult question, Jennifer. I would say that I – I've asked for information and I either never got an answer or it was – it took a long time.
>
> Q: What information are you referring to?
>
> A: Gosh, I think I asked for, like, injury – what were their injuries, what – what treatment were they getting? Also asked if you knew or if your firm knew of any underlying insurance being available to them. And it didn't end up being – having an impact on the claim, but just trying to be proactive. I know I asked about their relationships in case there was additional coverage that they could get. And I don't – I don't think I got a response to that ever, which is fine. **It didn't have any impact, but I was just trying to be proactive at the time before I knew it wouldn't. So…**

[Doc. 41-1 at 224:2–23 (emphasis added)]. Ms. Day's errata sheet seeks to clarify the bolded portion of this testimony by stating as follows:

> It didn't have any impact, but I was just trying to be proactive at the time before I knew it couldn't. However, without knowing what each person's injuries were and what the at fault limits were or payments were I can't complete an evaluation. In addition, if there is other UM/UIM coverage that applies I need to know so I can determine if pro-rata will apply. Although I don't think it ended up having an impact on the claim, I try to be proactive in an effort to be ready to resolve the claim for the insured as soon as they are ready.

[Doc. 32-1 at 4]. Ms. Day's clarification merely identifies the specific types of "underlying insurance"—that is, "UM/UIM coverage," [*id.*]—which she originally testified she was seeking from Plaintiffs to evaluate their claims; and her clarification also explains the specific information she was evaluating: whether "pro-rata will apply" to Plaintiffs' claims [*id.*]. *See* [Doc. 41-1 at

7

224:14–16 ("Also asked if you knew or if your firm knew of any underlying insurance being available to them … I know I asked about their relationships in case there was additional coverage that they could get."). Additionally, when read in context, Ms. Day's surrounding deposition testimony indicates some confusion when Plaintiff's counsel asked Ms. Day whether there was "anything" she was "unable to investigate because [Plaintiffs] failed to cooperate." [*Id*. at 224:2–4]. Ms. Day responded: "That's a difficult question, Jennifer. I would say that I – I've asked for information and I either never got an answer or it was – it took a long time." [*Id*. at 224:6–9]. Ms. Day's errata clarifies that she required additional information from Plaintiffs because "without knowing what each person's injuries were and what the at fault limits were or payments were [she] can't complete an evaluation." [Doc. 32-1 at 4]. The Tenth Circuit has found that alterations are appropriate pursuant to Rule 30(e) when "the earlier testimony reflects confusion which the [errata] attempts to explain." *Burns v. Bd. of Cty. Comm'rs of Jackson Cty.*, 330 F.3d 1275, 1282 (10th Cir. 2003) (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)).

However, the remainder of Ms. Day's changes go beyond what Rule 30(e) permits. First, Ms. Day attempts to change her testimony in response to the question, "Do you have any understanding of [Plaintiffs'] failure to cooperate?" [Doc. 41-1 at 223:21–24]. Ms. Day originally responded, "I'm not aware of anything like that. No." [*Id*. at 224:1]. Ms. Day now seeks to alter her response to state as follows: "I did not receive the information I requested nor did I ever receive any phone calls or correspondence to my letters. I also received no response to my offers which made it difficult to get an agreed upon value with the insured." [*Id*. at 4]. I find this change to be substantive and impermissible. Unlike Ms. Day's changes clarifying the specific information she sought, but did not receive, from Plaintiffs, discussed above, here Ms. Day seeks to amend her response altogether despite her initial response that she was "not aware" of Plaintiffs' "failure to

8

cooperate," including that Defendant had "asserted a failure to cooperate defense." *See* [Doc. 41-1 at 223:7–224:1].

Next, Ms. Day's third and sixth changes attempt to clarify whether the information she sought, but did not receive, from Plaintiffs impacted her evaluation of their claims. [*Id*. at 4–5]. For her third change, Ms. Day seeks to alter her original testimony, which stated, "No. It didn't end up having any impact on these particular claims," [Doc. 41-1 at 225:2–3], to the following:

> I'm not sure if it ended up having any impact on these particular evaluations; however in my experience conversations can change an evaluation. What I do believe it impacted was any ability to resolve the claim for our insureds.

[Doc. 32-1 at 4–5]. For her sixth change, Ms. Day similarly attempts to alter her original testimony from "Not in the long run. No," [Doc. 41-1 at 229:2], to "I'm not sure, I'd have to go back and look at all the information we requested and whether it was received or not, then determine if it would've impacted the evaluated. So it could have," [Doc. 32-1 at 5].

Based on the factors the Tenth Circuit articulated in *Burns*, these are impermissible material changes. First, Ms. Day's counsel cross-examined her during the deposition. [Doc. 41-1 at 228:1–15]. Second, Defendant does not claim the changes are based on newly discovered evidence. *See* [Doc. 34]. Third, Ms. Day's conclusory statement that she makes the changes because "[i]t was late in the day and [she] was suffering from a headache," [Doc. 32-1 at 3] is insufficient to satisfy Rule 30(e). *Cf. Senatore v. Lynch*, No. 13-cv-00856 (CRC), 2016 WL 1611578, at *1–2 (D.D.C. Apr. 22, 2016) (striking an errata sheet that used "one-word explanations," such as "clarification" or "correction"). Furthermore, the deposition testimony does not indicate that Ms. Day was confused while responding to the questions. She stated firmly that the missing information "didn't end up having any impact on these particular claims," [Doc. 41-1 at 225:2–3], and later reiterated a similar response after Defendant's counsel cross-examined her, [*id*. at 228:20–229:2]. Accordingly, Rule 30(e) does not permit this type of material change.

9

Lastly, Ms. Day's fourth, fifth, and seventh changes attempt to clarify her understanding of Plaintiffs' obligations, if any, to respond to Defendant's settlement offers. [Doc. 32-1 at 5]. Ms. Day originally testified she did not believe Plaintiffs were required to respond to Defendant's settlement offers. *See* [Doc. 41-1 at 227:9–17; 229:3–8]. In her errata, Ms. Day seeks to alter her testimony in each instance to add that Plaintiffs nevertheless "have a duty to cooperate" under the policy agreement. [Doc. 32-1 at 5]. I find this change unwarranted under *Burns*. Importantly, Ms. Day was aware of this information at the time of her deposition, and there is no indication that the question confused her. In the Response [Doc. 34], Defendant contends that "Ms. Day used some of the same words and phrasing in her clarification and did not contradict her testimony but only clarified her initial answer." [Doc. 24 at 3]. But Defendant's argument ignores Ms. Day's other deposition testimony that she "ha[d] not heard of anything like that" when Plaintiff's counsel asked if Ms. Day was "aware that in this case, Defendant has asserted a failure to cooperate defense." [Doc. 41-1 at 223:7–14]. Moreover, Ms. Day testified that she was the claims adjuster initially assigned to evaluate Plaintiffs' claims and had the opportunity to prepare for her testimony with counsel, including reviewing documents disclosed by the Parties. *See* [*id*. at 8:4–10:3]. That she later recalled a "duty to cooperate" under the policy agreement, regardless whether such duty actually exists, is inconsistent with her testimony that she was "not aware of" Plaintiffs' "failure to cooperate." [*Id*. at 223:21–224:1]. This court is particularly concerned that these changes to Ms. Day's testimony speak directly to Defendant's Second and Sixth Defense in this action. *See* [Doc. 23 at 19–20 (stating "Plaintiffs and/or Plaintiffs' agents did not respond to State Farm's settlement offers nor did they state they disputed State Farm's settlement offer, nor did they provide a basis or reasoning or other information as to why State Farm's offer was not acceptable.")]. Rule 30(e) does not permit Ms. Day to add testimony in this manner.

10

In sum, I decline to strike Ms. Day's errata sheet to the extent it clarifies her testimony regarding the information she sought, but did not receive, from Plaintiffs, as well as the purposes for which she was seeking that information on page 224 of her deposition. However, Ms. Day's changes to her testimony regarding her knowledge of Plaintiffs' "failure to cooperate"—which Defendant claim Plaintiffs failed to do, [Doc. 23 at 135]—as well as her responses concerning her understanding of Plaintiffs' obligations, if any, to respond to Defendant's settlement offers impermissibly alter her testimony. Accordingly, **IT IS ORDERED** that:

(1) The Motion to Strike the Errata Sheet for the Deposition of Lisa Day [Doc. 32] is **GRANTED IN PART and DENIED IN PART**;

(2) The errata entries associated with the following lines of the deposition testimony of Lisa Day are **STRICKEN**:

224:1; 225:2–3; 227:12; 227:17; 229:2; 229:7–8.[1]

---

[1] Rule 72 of the Federal Rules of Civil Procedure provides that, "[w]hen a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision." Fed. R. Civ. P. 72(a). Within fourteen days after service of a copy of this Order, any party may serve and file written objections to the Magistrate Judge's Minute Order/Order with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a). The district judge will set aside any portion of the Order only if it is clear that it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997); *see also Ariza v. U.S. W. Commc'ns, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996) ("Because a magistrate judge is afforded broad discretion in the resolution of non-dispositive . . . disputes, the court will overrule the magistrate's determination only if [her] discretion is abused."). The failure to make any such objection will result in a waiver of the right to appeal the non-dispositive order. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, such as when a "*pro se* litigant has not been informed of the time period for objecting and the consequences of failing to object").

DATED:  October 4, 2021 BY THE COURT:

Nina Y. Wang
United States Magistrate Judge

12